**FILED**

**May 20, 2016**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 11:05 AM



### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### COURT OF WORKERS' COMPENSATION CLAIMS
### AT MEMPHIS

| | | |
|---|---|---|
| **FERMAN LEE** | ) | **Docket No.: 2015-08-0651** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 94164-2015** |
| **AMERICAN EMPLOYER GROUP** | ) | |
| **Employer,** | ) | **Judge Amber E. Luttrell** |
| **And** | ) | |
| **PROSIGHT SPECIALTY INS.** | ) | |
| **Insurance Carrier.** | ) | |

## EXPEDITED HEARING ORDER DENYING MEDICAL AND TEMPORARY DISABILITY BENEFITS

This matter came before the undersigned Workers' Compensation Judge on the Request for Expedited Hearing filed by the employee, Ferman Lee, pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is Mr. Lee's entitlement to medical and temporary disability benefits arising out of an October 12, 2015 injury. The central legal issue is whether Mr. Lee is likely to prevail at a hearing on the merits regarding whether his alleged injury arose in the course and scope of his employment. For the reasons set forth below, the Court finds Mr. Lee did not carry his burden of proving entitlement to the requested benefits.[1]

### History of Claim

Mr. Lee is a forty-eight-year-old resident of Phillips County, Arkansas. He worked as a truck driver for American Employer Group based in Oak Ridge, Tennessee. Mr. Lee transported loads out of Memphis, Tennessee, for American Employer's customer, Service One Transport. He worked as an irregular route driver. American Employer paid him by the mile and not by the hour unless he was performing local work.

Mr. Lee alleged a work-related injury on Monday, October 12, 2015, while driving in a parking lot at a Pilot Truck Stop. Mr. Lee searched for a parking place when another

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

truck struck his truck with the trailer. Mr. Lee alleged injuries to his head, neck, and low back in the accident. American Employer denied the claim on grounds Mr. Lee was not in the course and scope of his employment at the time the incident occurred. (T.R. 4.)

In support of his claim for workers' compensation benefits, Mr. Lee provided the following testimony concerning his account of the events leading up to the accident on October 12, 2015:

On Friday, October 9, 2015, Mr. Lee finished his delivery route and drove home to Helena, Arkansas. (Ex. 1.) A dispatcher advised Mr. Lee he added his name to a list of drivers to be called on Sunday, October 11, 2015. *Id.* On Sunday morning at 9:55 a.m., Service One's weekend dispatcher, Jamie Cooper, called Mr. Lee at home regarding his availability that day to transport a load. (Ex. 3.)[2] According to Mr. Lee, Mr. Cooper instructed him to "come on up for this afternoon to get ready to stage yourself for a FedEx load." Mr. Lee testified Service One typically dispatched FedEx loads on Sundays between 3:00 p.m. and 5:00 p.m. Mr. Lee stated he was "on duty"[3] from the moment Mr. Cooper called him. Mr. Lee promptly left home and drove to Memphis. He picked up a truck from the Service One terminal and drove to FedEx to "stage himself" for a load.[4] No one was on the Service One premises when he picked up the truck.

Service One did not dispatch Mr. Lee on Sunday for a delivery. Mr. Lee stated it was not uncommon for a driver to be on call and Service One not have a load to dispatch. Since he was not dispatched on Sunday, Mr. Lee believed he would be dispatched the following morning at 8:00 a.m. by the weekday dispatcher. Therefore, instead of returning home, Mr. Lee slept in the sleeper of his truck on FedEx property. On Monday morning, October 12, 2015, at approximately 7:00 a.m. Mr. Lee drove to the Service One terminal to use the restroom facilities and ready himself for any potential dispatch orders at 8:00 a.m. He testified there was no one at the Service One building; therefore, he drove his truck to the nearest Pilot truck stop to use the restroom facilities. The subject injury occurred at this location. Mr. Lee acknowledged he received no payment for October 11 or October 12, 2015, since he is an irregular driver paid by the mile and did not receive any dispatch orders.

Mr. Lee called Sean Fletcher, Service One's Memphis terminal manager, to report the accident. Mr. Lee testified he informed Mr. Fletcher he was "beginning to hurt" and needed to see a doctor. He returned to the Service One office, filled out a form, and spoke to Mr. Fletcher again. He then spoke on the telephone with Robert Walker, Service One's

---

[2] Jamie Cooper dispatched loads by telephone for Service One Transport. He is located in Muscle Schoals, Alabama. The parties agreed Mr. Cooper called Mr. Lee on October 11, 2015; however, the parties disputed the substance of the conversation.

[3] Mr. Lee used the term "on duty" and "on call" interchangeably during his testimony.

[4] Mr. Lee defined "staging" to mean when a dispatcher instructs him to get his truck and go to FedEx to be ready to be dispatched.

owner, concerning the accident. Mr. Lee testified Mr. Walker became belligerent about the accident and fired him. He cleaned out his truck and returned home.

The only medical treatment Mr. Lee sought for his alleged injuries occurred November 2, 2015. Mr. Lee admitted into evidence a discharge summary from Helena Regional Medical Center. (Ex. 5.) Dr. Paul Veach diagnosed, "head contusion, unspecified part of head; myofascial cervical strain; myofascial lumbar strain." Mr. Lee testified he has headaches, neck pain, and back pain. He complained of muscle stiffness in the mornings and testified he has difficulty moving until he takes Advil and waits thirty to forty minutes to return to normal.

For its case, American Employer offered the testimony of Robert Walker, Jamie Cooper, and Sean Fletcher.

*Robert Walker's Testimony*

Mr. Walker is the owner of Service One Transport. His company contracts with American Employer for truck drivers. Mr. Walker described the procedure followed by Service One dispatchers. When a dispatcher comes on duty, he reviews a list of potential drivers that are available to work. The dispatcher calls the drivers on the list to ensure they have available hours to work. When Service One receives available loads, the dispatcher contacts a driver to assign the work. Mr. Walker testified he would discipline his dispatchers for failing to call drivers in the morning to check their availability for the day.

Mr. Walker testified that, after confirming a driver's availability, the dispatcher instructs the driver to maintain access by phone so the dispatcher can make contact if a load becomes available. Service One does not pay drivers when they are on an "on call" availability list. Mr. Walker stated if a driver is told to come in, they are considered "on duty" and the law requires the driver to log "on duty" in his log-book. The U.S. Department of Transportation limits drivers to fourteen hours of "on duty" status during a twenty-four-hour period. Therefore, Service One does not place a driver "on duty" until they actually have a load to deliver. Otherwise, the drivers would use up their fourteen hours of time waiting on a call and not delivering loads for the company. Mr. Walker testified Mr. Lee never filled out his "on duty" log for October 11 or October 12.

Mr. Walker further testified his company requires its customers to allow Service One at least two hours to provide transportation for any freight. This rule allows drivers, upon dispatch, at least two hours to travel to the site and pick up a load of freight. If a driver were unable to take a load in time, Mr. Walker stated he would make a shift note that the original driver was not available and would contact the next driver.

Mr. Walker testified Mr. Lee was "on call" on Sunday, October 11, which meant

3

he should have a phone available in case Service One needed him to deliver a load. He stated no one instructed Mr. Lee to come to Memphis to wait for a load on October 11. Mr. Walker further testified Mr. Lee did not have permission to take a Service One truck on October 11.

Mr. Walker further testified regarding Service One's policy concerning authorized gas station/truck stops. Service One has a service that comes to its terminal and fuels the trucks. While on the road, drivers have gas cards for use at Pilot, Flying J, and Love's stations. However, Service One strictly prohibits its drivers from using the Pilot station closest to the Service One terminal and their gas cards do not work at that station. Mr. Walker stated the prohibited Pilot station has a history of drug use and prostitution, and Service One trucks were damaged in the past while on that property. Service One notified its drivers of its policy concerning the prohibited Pilot station, as discussed at driver orientation and in a bulletin-board posting at its office.

Following Mr. Lee's accident, Mr. Walker asked him what happened and "why were you there?" Mr. Lee responded, "I left the Love's Truck stop coming to the yard. I stopped at the Pilot to use the restroom when the accident occurred." Mr. Lee did not advise why he went to the Love's Truck stop. Mr. Walker acknowledged he was angry during his telephone conversation with Mr. Lee. He stated, "I was upset that my truck was damaged. I was upset that there was a vehicle on the road that my management staff or dispatch staff had no idea it was on the road." He could not recall if Mr. Lee requested medical treatment. However, Mr. Walker testified he instructed him to go to Concentra Medical Center for a post-accident drug screen and authorized examination while there.[5] Mr. Lee never presented to Concentra for the post-accident drug screen.

Finally, Mr. Walker testified the outcome of Mr. Lee's claim does not impact Service One's workers' compensation insurance because Mr. Lee is not Service One's employee. He stated he has no financial interest in the outcome of this claim. He agreed to testify at the Expedited Hearing because, "it's the right thing to do."

*Jamie Cooper's Testimony*

Jamie Cooper is the night and weekend dispatcher for Service One. Mr. Cooper testified that, on weekends, he calls drivers in the morning to check their availability to deliver loads. The morning phone call also assists Mr. Cooper with determining how many loads he may accept from a customer that particular day. Mr. Cooper could not specifically remember calling Mr. Lee the morning of October 11. However, he testified if he did call him that morning, he did not instruct Mr. Lee to drive to Memphis at that time. He stated he would have asked Mr. Lee in the call how much advance notice he would need to pick up a load if one became available.

---

[5] Mr. Lee adamantly disputes that Mr. Walker or Mr. Fletcher advised him he could seek treatment at Concentra.

4

Mr. Cooper denied instructing Mr. Lee to drive to Memphis to wait for a load on October 11, 2015. He testified Mr. Lee should have stayed home to await dispatch for a load. He would not instruct a driver to drive to Memphis and pick up a truck without a load to dispatch because it wastes fuel to leave a truck idling. Moreover, he stated he would not instruct him to drive to Memphis without giving him a route number to pick up for the load to be delivered. Mr. Cooper had no knowledge Mr. Lee traveled to Memphis on Sunday to wait for a load.

Mr. Cooper further testified drivers typically do not sleep in their truck at FedEx. He stated there was no reason to sleep on the FedEx premises. Mr. Cooper stated Mr. Lee should not have had access to the FedEx premises without a route number for a load.

*Sean Fletcher's Testimony*

Mr. Fletcher is the terminal manager for Service One Transport in Memphis. Mr. Fletcher testified regarding his conversation with Mr. Lee following the accident on October 12.

When Mr. Lee returned to the Service One office following the accident, Mr. Fletcher instructed him to go to Concentra for a post-accident drug screen. He stated Mr. Lee complained of pain in his back or neck, and he advised him he could seek treatment at Concentra as well. After speaking with Mr. Walker on the telephone, Mr. Lee tossed his keys on Mr. Fletcher's desk and indicated he was going to see a doctor and a lawyer.

Mr. Fletcher further confirmed Service One's policy prohibiting drivers from using the Pilot station closest to the Service One terminal. He confirmed he posted the policy on his bulletin board and explained it to drivers at orientation.

Finally, Mr. Fletcher testified Service One authorizes its drivers to use the Flying J stations. He stated, "We don't go to the Love's or Pilot."

Mr. Lee filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice (DCN). Mr. Lee filed a Request for Expedited Hearing, and this Court heard the matter on April 22, 2016.

**Findings of Fact and Conclusions of Law**

Under Tennessee Workers' Compensation Law, Mr. Lee has the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions*, No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd.

5

Aug. 18, 2015). To prove a compensable injury, Mr. Lee must show that his injury arose primarily out of and in the course and scope of his employment. Tenn. Code Ann. § 50-6-102(14) (2015).

As stated above, the determinative issue before this Court is whether Mr. Lee was in the course and scope of his employment at the time of his accident on October 12. The Appeals Board recently reiterated the long-standing principle that "an injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform." *Sirkin v. Trans Carriers, Inc.*, No. 2015-08-0292, 2016 TN Wrk. Comp. App. Bd. LEXIS 22 at *6 (Tenn. Workers' Comp. App. Bd. May 9, 2016). The Appeals Board further noted, "Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury." *Id.*

*Sirkin* involved a somewhat similar fact pattern to the present case. In *Sirkin*, the employee was a truck driver who sustained an injury when she slipped getting out of the employer's truck after checking the on-board computer system about assignment of a load. She also went to jump-start the truck's battery per the suggestion of her supervisor. The Employer denied the claim and argued Ms. Sirkin was not in the course of her employment. It argued she had no reason to go to her truck because she did not have a load to deliver, nor otherwise scheduled to work. *Id.* at *2.

Concerning the "in the course and scope of employment" requirement, the Appeals Board affirmed the trial court's finding that Ms. Sirkin sustained her injury within the course of employment. *Id.* at *7. In doing so, the Appeals Board held, "While Ms. Mohundro and Ms. Ward testified that communicating about loads through Qualcomm was not the exclusive method of doing so, there was no evidence that Employee's use of the system to check for loads was unreasonable, inappropriate, or prohibited." *Id.* at *7. The Appeals Board further relied upon Ms. Sirkin's unrefuted testimony that her supervisor suggested she remedy the situation with the truck battery in affirming the trial court decision that she was in the course of her employment at the time of injury. *Id.* at *8.

Unlike the facts in *Sirkin*, the facts in the present case do not reasonably support a finding that Mr. Lee was in the course and scope of his employment at the time of his accident on October 12. In the present case, the Court finds Mr. Cooper's testimony more persuasive than Mr. Lee's testimony. Mr. Cooper testified that his standard protocol was to call drivers, like Mr. Lee, in the morning to check availability for the day. The proof indicated drivers have the option to tell Mr. Cooper if they are not available to deliver any loads in the morning telephone call. On Sunday, October 11, Mr. Lee advised he was available and willing to work that day, and Mr. Cooper testified he would have instructed him to keep his phone nearby and he would call at a later time if he had a FedEx load for delivery. Mr. Cooper testified credibly that he did not and would not instruct Mr. Lee to drive to Memphis and sit idling in a truck, wasting fuel, to wait on a load. Moreover,

6

even Mr. Lee acknowledges that Service One did not dispatch him at all on Sunday, October 11.

The Court further finds the proof at the Expedited Hearing regarding Mr. Lee's "on call status" indicated it required only for the driver to keep his personal phone near him after he voluntarily agreed to make himself available to deliver a load. Service One did not pay drivers while on "on call status" and drivers were not "on duty" for purposes of DOT regulations until they had a duty to perform. Drivers are required to document when they are "on duty" in a log-book and the proof indicated Mr. Lee did not document he was "on duty" in his log-book on October 11 or October 12. There was no proof at the Expedited Hearing to indicate a driver who was voluntarily "on call" to accept a possible assignment was performing a duty for the employer at that time such that he was in the course and scope of his employment.

The Court further finds Mr. Lee sustained his injury while driving a Service One truck, unauthorized, at a Pilot Truck Stop in violation of Service One's company policy. While the testimony of Service One's witnesses was not entirely consistent regarding the branded stations it authorizes its drivers to use, their testimony was unequivocal that the Pilot station closest to Service One was strictly prohibited for drivers. Mr. Walker testified it was a longstanding policy based upon the location's reputation for drug use and prostitution. Moreover, Mr. Walker testified his trucks sustained damage in previous years at that particular station.

In sum, based upon the facts in evidence, the Court finds Mr. Lee's actions on October 11 and 12 were unreasonable under the circumstances and were not within the course and scope of his employment duties. Accordingly, the Court finds, as a matter of law, that Mr. Lee has not come forward with sufficient evidence from which this Court may conclude that he is likely to prevail at a hearing on the merits in establishing entitlement to the benefits he seeks.

Mr. Lee's failure to carry his burden of proving compensability at this interlocutory stage pretermits his claim for temporary disability benefits. Moreover, had Mr. Lee prevailed in proving compensability, he did not come forward with any medical proof supporting an award of temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Lee's request for medical and temporary disability benefits is denied.

2. This matter is set for an Initial (Scheduling) Hearing on July 19, 2016, at 10:00 a.m. Central time.

**ENTERED this the 20th day of May, 2016.**

7

_Judge Amber E. Luttrell_
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Luttrell, Court of Workers' Compensation Claims. You must call 731-422-5264 or toll-free at 855-543-5039 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk _within seven business days_ of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

8

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Ferman Lee
2. Wage Statement
3. Ferman Lee's Cell Phone Log
4. First Report of Work Injury
5. Helena Regional Medical Center Record

Technical record:[6]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. C-23 Notice of Denial

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of May, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
| --- | --- | --- | --- | --- |
| Ferman Lee, Employee | X | | X | 1125 Ohio Street P.O. Box 523 Helena, AR 72342; Fermanlee72@gmail.com |
| Stephanie Rockwell, Esq., Employer's Attorney | | | X | Stephanie@speed-seta.com; margay@speed-seta.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
WC.CourtClerk@tn.gov

11